UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EXODUS RICHMOND | Case No. 21-CR-152<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

On March 2, 2021, a grand jury indicted Defendant of possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). [1]. While Defendant's three-day jury trial on that charge was underway, the Supreme Court decided *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). Defendant was convicted on June 23, 2022. [97]. On September 15, 2023, over a year after the Supreme Court decided *Bruen*, Defendant moved for leave to file a motion to dismiss the indictment [1] for good cause under Federal Rule of Criminal Procedure 12 based upon *Bruen*. [126]. He also filed the motion to dismiss, [124], without leave, making both a facial and as-applied challenge to the constitutionality of § 922(g)(1) under the Second Amendment to the United States Constitution. U.S. Const. amend. II ("A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.").

This Court permitted full briefing of both the timeliness and the merits of Defendant's *Bruen* arguments, *see* [124], [126], [131] [133] [135], and, for the reasons set forth below, now denies Defendant's motions for leave to file [126] and to dismiss [124].

I.   **Defendant Fails to Show "Good Cause" Under Rule 12(c)(3)**

Federal Rule of Criminal Procedure 12(b)(3) sets forth a list of motions that must be made before trial and provides that a "defect in the indictment" for failure to state an offense "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A). If not made before trial, such a motion is untimely, but a district court may consider the motion "if the party shows good cause." Fed R. Crim. P. 12(c)(3). The rule does not define "good cause," but the Seventh Circuit has stated that an "intervening legal decision that overturns settled law" qualifies. *United States v. Maez*, 960 F.3d 949, 956 (7th Cir. 2020). It is on this basis that Defendant seeks leave to file his motion to dismiss the indictment.

Defendant does not dispute that his motion to dismiss is untimely,[1] but contends that he has "good cause" to file this untimely motion because *Bruen* constitutes an "intervening legal decision that overturns settled law," under *Maez*. [126] at 2. In *Maez*, the defendants, in separate cases, were convicted by juries under § 922(g) before the Supreme Court decided *Rehaif v. United States*, 588 U.S. 225, 237 (2019). Following *Rehaif*, the defendants challenged their convictions arguing that— in light of *Rehaif*—an element was "missing" from their indictments. *Maez*, 960 F.3d at 953. Prior to *Rehaif*, every federal court of appeals required the Government, in a prosecution under § 922(g), to prove only that the defendant knew he possessed a firearm or ammunition. *Id.* (citing *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020)). *Rehaif* "reached a different conclusion," holding that the Government must prove "both that the defendant knew he possessed a firearm *and* that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Maez*, 960 F.3d at 953 (citing *Rehaif*, 588 U.S. at 237)) (emphasis added). Thus, *Rehaif* changed the governing legal standard for § 922(g) offenses, adding an element to the "knowingly" requirement. *Id.* at 955. The Seventh Circuit held that *Rehaif* qualified as an intervening legal decision that overturned settled law, and therefore provided the defendants with "good cause" to lodge untimely challenges to their indictments under Rule 12(b)(3). *Maez*, 960 F.3d at 956.

*Bruen* is not *Rehaif*. As both the United States Supreme Court and the Seventh Circuit have recently held, *Bruen* does not disturb the Supreme Court's prior decisions in *District of Columbia v. Heller*, 554 U.S. 570, (2008) and *McDonald v. Chicago*, 561 U.S. 742, 786 (2010) affirming longstanding prohibitions on the possession of firearms by felons. *See United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024); *United States v. Gay*, 98 F.4th 832, 846 (7th Cir. 2024). Rather, *Bruen* considered only the applicable framework for assessing challenges to firearm regulations under the Second Amendment, rejecting the "two-part approach" that had been developed by some federal courts of appeals in evaluating such challenges in favor of one that "centers on the constitutional text and history." 597 U.S. at 19– 25. The Court in *Bruen* did not mention § 922(g)(1), or any other criminal statute, let alone invalidate it. Indeed, in deciding *Bruen*, several justices affirmed this limitation. *See Bruen,* 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80–81 (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing statement

---

[1] Defendant sought leave to file his motion in September 2023, waiting more than a year after being convicted at trial and a year after the Supreme Court's decision in *Bruen*, and filing the motion less than one week before sentencing. The record fails to show any good cause for this delay.

in *Heller* about the propriety of "longstanding prohibitions on the possession of firearms by felons"); *see also id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) (agreeing with Justice Kavanaugh that Court's decision in *Bruen* "cast[s] no doubt" on *Heller*'s prohibition of firearms possession by felons). In short, unlike the Supreme Court's decision in *Rehaif*, *Bruen* did not "overturn" any settled law with respect to § 922(g)(1).

In the face of this binding authority, Defendant cites *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), for the proposition that *Bruen* qualifies as an "intervening legal decision that overturns settled law." [126] at 3. In *Range*, the Third Circuit applied the framework set out in *Bruen* and held § 922(g)(1) unconstitutional as applied to a defendant who was convicted of a single misdemeanor for making a false statement to obtain food stamps in 1995. *Id.* at 103–106. But the Supreme Court vacated the Third Circuit's decision in *Range* and remanded the matter for further consideration in light of *Rahimi*. *See Garland v. Range*, No. 23-374, 2024 WL 3259661, at *1 (U.S. July 2, 2024). Such action takes the wind out of Defendant's sails on this issue.

Moreover, the court in *Range* limited its holding; and, even if, as the Seventh Circuit noted in *Gay*, "*some* room" remains for an as-applied challenge in a post-*Bruen* world, that door remains open only to "someone whose most serious conviction is for a non-violent crime that did not lead to even one day in prison," *Gay*, 98 F.4th at 846. Defendant Richmond, unlike Range, has multiple convictions for violent and serious felony offenses, including for: (1) a 2015 conviction for robbery and unlawful restraint; (2) a 2018 conviction for possessing controlled substances, (3) another 2018 conviction for aggravated assault of a peace officer in 2018; and (4) a 2019 conviction for delivery of cannabis.[2] [115]. As a result, *Range* cannot supply Defendant with the requisite "good cause" for an untimely motion to dismiss.

Defendant also cites *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023) as further support that *Bruen* qualifies as an intervening decision that overturns settled law. But in that case, the Seventh Circuit did not rule upon the constitutionality of § 922(g)(1). Instead, it remanded the case because the parties' briefing failed to "grapple with *Bruen*." *See id.* at 1022; *see also United States v. Jones*, No. 23-2459, 2024 WL 1427024, at *2 (7th Cir. Apr. 3, 2024) (acknowledging that "the historical assessment on the constitutionality" of § 922(g)(1) under *Bruen* remained "inconclusive" after *Atkinson*). By contrast, since *Atkinson* was decided, the Seventh Circuit directly addressed the issue head-on in *Gay* and confirmed that *Bruen* merely alters the relevant test for determining the validity of firearms

---

[2] *See, e.g., United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011) ("Drug crimes are associated with dangerous and violent behavior") (citing *United States v. Askew*, 403 F.3d 496, 508 (7th Cir. 2005)).

restrictions under the Second Amendment but leaves unchanged prior case law upholding the constitutionality of § 922(g)(1). *See Gay,* 98 F.4th at 846.

For these reasons, the Court rejects Defendant's argument that *Bruen* overturned settled, binding authority declaring the restrictions on the possession of firearms or ammunition by convicted felons under § 922(g)(1) constitutional under the Second Amendment. And, because he offers no other basis for "good cause" under Rule 12(b)(3) to file an untimely motion to dismiss the indictment, the Court denies Defendant's motion for leave to file the motion to dismiss [126] and denies the motion to dismiss [124] as untimely.[3]

## II. In Any Event, Defendant's Motion to Dismiss Fails On the Merits

Even if this Court were to grant Defendant leave to file his motion to dismiss, this Court finds, in the alterative, that the motion still fails on its merits.

### A. Controlling Case Law Confirms § 922(g)(1)'s Constitutionality.

Binding precedent forecloses any facial invalidation of § 922(g)(1) under the Second Amendment. As noted above, the Seventh Circuit held in *Gay* that such an "argument is hard to square with *Heller*" which affirmed "that the Second Amendment creates personal rights" and "pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid." 98 F.4th at 846. Indeed, in *McDonald*, the Supreme Court again reiterated that all of the reservations and provisos in *Heller*, including the "prohibitions on the possession of firearms by felons," retain their validity. 561 U.S. at 786 (plurality opinion). And in *Bruen* itself, the concurring and dissenting justices indicated that the Court's opinion was not intended to alter the Court's prior endorsement of prohibitions on firearms possession by felons in *Heller* and *McDonald*. *See Bruen,* 597 U.S. at 72 (Alito, J., concurring); *id.* at 80–81 (Kavanaugh, J., joined by the Chief Justice, concurring), *id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting). Nonetheless, if any doubt remained about *Heller*'s endorsement of § 922(g)(1)'s constitutionality post-*Bruen*, the Seventh Circuit resolved such uncertainty in *Gay*. Accordingly, in the

---

[3] In arguing for leave to file his untimely motion to dismiss, Defendant contends that he did not file the motion immediately after *Bruen* because initially, the "general weight of authority" followed the prior "consensus" that § 922(g)(1) is constitutional. [126] at 2–3. Now, Defendant claims, "that consensus has been meaningfully challenged." *Id.* at 3. As explained, the Supreme Court's treatment of *Range* undermines his argument. But even before *Range*, as of October 2023 when Defendant filed his motion for leave to file the motion to dismiss, "at least 259 decisions" denied challenges like Defendant's. [131] at 6. District court decisions striking down § 922(g) post-*Bruen* remain outliers. *See* [131-1] (list of federal district court decisions upholding constitutionality of § 922(g)(1) following *Bruen* as of October 10, 2023). Further, as of the date of this Order, at least 600 separate rulings have held that § 922(g)(1) remains constitutional following *Bruen*. *See* [135] at 7–8; [135-1] (citing cases). His explanation thus falls short of demonstrating good cause.

absence of any definitive invalidation of § 922(g)(1) by the Supreme Court itself, the *Bruen* opinion (without more) fails to undermine the constitutionality of the statute.

Indeed, in *Rahimi*, issued just a few months ago, the Supreme Court again endorsed the presumptive constitutionality of a blanket prohibition on felons possessing firearms. 144 S. Ct. at 1902 ("*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"). At oral argument in this case, the Government argued that nothing in *Rahimi* undermined the Seventh Circuit's decision in *Gay*; Defendant did not dispute the point, and this Court agrees. As numerous lower courts have observed, *Rahimi* reinforces the conclusion that § 922(g)(1) remains consistent with the Second Amendment. *See, e.g., United States v. Rambo*, No. 23-13772, 2024 WL 3534730, at *2 (11th Cir. July 25, 2024) ("*Rahimi* did not discuss § 922(g)(1) at all, nor did it undermine our previous interpretation of *Heller*. To the contrary, *Rahimi* reiterated that prohibitions 'like those on the possession of firearms by felons and the mentally ill, are presumptively lawful.'"); *United States v. Young*, No. 23-10464, 2024 WL 3466607, at *9 (11th Cir. July 19, 2024) (observing that in *Rahimi*, the Court once again declared that the prohibition on the possession of firearms by felons remains 'presumptively lawful); *United States v. Johnson*, No. 23-11885, 2024 WL 3371414, at *3 (11th Cir. July 11, 2024) (same); *United States v. Philpot*, No. 23-3368, 2024 WL 3429177, at *7 n.2 (6th Cir. July 16, 2024) (observing that, in *Rahimi*, the Supreme Court endorsed § 922(g)'s constitutionality); *United States v. Lewis*, No. CR 24-144 (LLA), 2024 WL 3581347, at *2 (D.D.C. July 29, 2024) ("The Supreme Court's decision last month in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), only supports the court's conclusion that Section 922(g)(1) is consistent with the Second Amendment."); *United States v. Slone*, No. CR 16-400, 2024 WL 3568571, at *3 (E.D. Pa. July 29, 2024) (the Supreme Court's decision and reasoning in *Rahimi* reinforces the constitutionality of Section 922(g)(1)"); *United States v. Singletary*, No. 23-CR-6134, 2024 WL 3407961, at *2 (W.D.N.Y. July 15, 2024) (observing that, in *Rahimi*, "the Supreme Court favorably quoted *Heller*'s statement on firearm restrictions for felons" and thus rejecting the defendant's facial challenge to § 922(g)(1)).[4]

*Rahimi* and *Gay* make clear that *Bruen* merely alters the relevant test for determining the scope of the Second Amendment but leaves intact prior case law upholding the constitutionality of § 922(g)(1).

---

[4] As noted, further bolstering the notion that § 922(g)(1) remains constitutional post-*Bruen*, the Supreme Court also vacated the Third Circuit's decision in *Range,* 69 F.4th 96, which found § 922(g)(1) unconstitutional as applied to a defendant whose criminal record included just a decades-old non-violent offense. The Court remanded the matter for further consideration in light of *Rahimi*. *See Garland v. Range*, No. 23-374, 2024 WL 3259661, at *1 (U.S. July 2, 2024).

B. **Historical Analysis Confirms § 922(g)(1)'s Constitutionality.**

Prior to *Gay*, the Seventh Circuit declined to rule on the constitutionality of § 922(g)(1) under the *Bruen* standard, pending a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)" by the district court. *Atkinson*, 70 F.4th at 1022; *see also United States v. Jones*, No. 23-2459, 2024 WL 1427024, at *2 (7th Cir. Apr. 3, 2024) (acknowledging that "the historical assessment on the constitutionality" of § 922(g)(1) under *Bruen* remained "inconclusive" after *Atkinson)*. Given *Gay*'s more recent analysis of Supreme Court precedent, however, a historical review now appears unnecessary in this case.[5]

Nevertheless, to the degree the Defendant seeks a historical analysis by this Court in a post-*Gay* world, this Court finds that the Government has presented historical evidence (not factually disputed by the parties), [135] at 18–41, and that the Government has carried its burden of answering the questions presented by *Atkinson*.[6] In short, based upon the record here, this Court adopts the well-reasoned historical review and legal analysis of Circuit Judge Wood in her dissent in *Atkinson*, 70 F.4th at 1025 ("My own assessment of the materials that now govern Second Amendment questions per *Bruen* convinces me that the categorical prohibition created by section 922(g)(1) passes muster under the Constitution.").[7]

---

[5] As explained above, in dicta, the *Gay* court suggested that non-violent offenders *may* be able to assert a non-frivolous as-applied challenge, but held that, even if such a challenge were permitted, Gay's would fail because he was, by no means, a "law-abiding, responsible citizen," having been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison. 98 F.4th at 846–47. Without a doubt, this type of hypothetical challenge, even if viable for a certain category of felons, would not help the Defendant in this case given his criminal history and conduct in this case.

[6] In *Atkinson*, the Seventh Circuit listed five questions to "help focus the proper analysis" in determining whether the statute is "consistent with this Nation's historical tradition of firearm regulation" under *Bruen*. 70 F.4th at 1020, 1024–25. Nonetheless, it acknowledged that any trial court's historical analysis would "no doubt yield some measure of indeterminacy" and that, prior to receiving additional Supreme Court guidance, the courts would "have to give the best answer available" on whether the Government met its historical-tradition burden. *Id.* at 1024. The Government has met its burden here and, given the absence of factual disputes by the parties, no evidentiary hearing was requested or required. *United States v. Agee*, No. 21-CR-00350-1, 2023 WL 6443924, at *6–7 (N.D. Ill. Oct. 3, 2023) ("Put another way, by not otherwise refuting the particular laws, treatises, or academic articles, [defendant] implicitly accepts that the government has presented them accurately" and thus "no evidentiary hearing is needed in this particular case" because defendant "mounts no counterattack on the accuracy of the sources.").

[7] Likewise, this Court incorporates by reference both the historical review and interpretation of Supreme Court precedent that has arisen from other persuasive authorities, each upholding the constitutionality of § 922(g)(1). *See United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) ("In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the

Moreover, if this Court were to consider it, Defendant's "as-applied" constitutional challenge would fail.

Historical evidence obviates the need for any case-by-case examination of as-applied challenges to § 922(g)(1). *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) ("Given these assurances by the Supreme Court, and the history that supports them, we conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."); *see also Atkinson*, 70 F.4th at 1027 (Wood, J., dissenting) (suggesting that enabling individuals to seek to establish a case-specific exemption from a generally applicable criminal law would create "an arbitrary patchwork of decisions—as far from the rule of law as one could image"). As the court in *Jackson* also noted:

> If the historical regulation of firearms possession is viewed instead as an effort to address a risk of dangerousness, then the prohibition on possession by convicted felons still passes muster under historical analysis. Not all persons disarmed under historical precedents—not all Protestants or Catholics in England, not all Native Americans, not all Catholics in Maryland, not all early Americans who declined to swear an oath of loyalty—were violent or dangerous persons. The Third Circuit panel understood this fact to mean that the historical justification for regulation was not limited to dangerousness. [citing *Range v. Att'y Gen.,* 53 F.4th 262, 275–282 (3d Cir. 2022)]. But if dangerousness is considered the traditional *sine qua non* for dispossession, then history demonstrates that there is no requirement

---

prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that the statute is constitutional as applied to Jackson."); *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) ("The longstanding prohibition on possession of firearms by felons is constitutional, and the district court properly denied the motion to dismiss."); *United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) ("Nothing in the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), reflects a retreat from the Court's earlier statement in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that 'longstanding prohibitions on the possession of firearms by felons and the mentally ill' are 'presumptively lawful.'"); *Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023) ("Though *Bruen* created a new test for determining the scope of the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons. If anything, *Bruen* contains two potential signs of support for these prohibitions."); *United States v. Dubois*, 94 F.4th 1284, 1292–93 (11th Cir. 2024) ("The Supreme Court left no doubt that it viewed its decision as a faithful application of *Heller*, not a departure from it," confirming "that *Heller* correctly 'relied on the historical understanding of the Amendment to demark the limits on the exercise of that right.'"); *United States v. Phillips*, No. 1:22-CR-00596, 2023 WL 9001124, at *14 (N.D. Ill. Dec. 28, 2023) (The "historical analogues provided by the government support a legislative authority to disarm persons convicted of felonies, regardless of whether the conviction involved a use (or attempted use) of force.").

> for an individualized determination of dangerousness as to each person in a class of prohibited persons. Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed. In reasoning by analogy from that history, "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated."

69 F.4th at 504. *See also United States v. Phillips*, No. 22-CR-00596, 2023 WL 9001124, at *14 (N.D. Ill. Dec. 28, 2023) ("Lastly, to the extent Phillips challenges the felon dispossession statute, as applied to him, that challenge fails. Like the defendant in *Atkinson*, Phillips fails to provide 'much historical basis for individualized assessments' or carveouts between 'individuals who committed violent versus non-violent crimes' for § 922(g)(1) purposes.") (citing *Atkinson*, 70 F.4th at 1023).

Thus, while the Government "bears the burden of proving the constitutionality" of § 922(g)(1), *Bruen*, 597 U.S. at 24 (quoting *United States v. Playboy Entertainment Grp., Inc.*, 529 U.S. 803, 816 (2000)), it can (and did) meet its burden, based upon this historical evidence, without delving into the individualized assessment Defendant requests. *See United States v. Young*, No. 2:22-CR-20 JD, 2023 WL 8697936, at *2–3 (N.D. Ind. Dec. 15, 2023) (The "historical record shows strong support for the ability to categorically prohibit a defined group from possessing arms based on the legislature's assessment the group was dangerous or untrustworthy, without individual dangerousness assessments of group members."); *United States v. Barwicks*, No. 20-CR-00563, 2024 WL 1521473, at *13–14 (N.D. Ill. Apr. 8, 2024) (same); *United States v. Pope*, 613 F.3d 1255 (10th Cir. 2010) (Gorsuch, J.) (concluding that as-applied Second Amendment challenge to § 922(g)(9) could not be brought pre-trial because the defendant "contends the statute is unconstitutional only in light of the 'facts surrounding the commission of the alleged offense'—the very facts a court may not consider before trial").

Second, to the degree such an individualized challenge might be available for certain types of felons, *Gay*, 98 F.4th at 846, it cannot help Defendant here. As indicated above, at the time of the offense, Defendant had multiple prior felony convictions, including: (1) a 2015 conviction for robbery and unlawful restraint; (2) a 2018 conviction for possessing controlled substances; (3) another 2018 conviction for aggravated assault of a peace officer; and (4) a 2019 conviction for delivery of cannabis. [115]. And, in this case, Defendant's lawless conduct went beyond mere possession of a firearm: he carried a loaded .38 caliber revolver handgun in his front pocket through a residential neighborhood, fired twice at an occupied vehicle, then threw the firearm—loaded with three rounds of ammunition—over a fence into someone's yard to avoid getting caught. *Id.* at 4. Defendant, as in *Gay*, "violated the law in secret and tried to avoid detection"; he did not seek a declaratory judgment while complying with existing law. *Gay*, 98 F.4th at 843. In short, Defendant

remains outside the group of "law-abiding, responsible citizens" who enjoy the constitutional right to possess firearms. *See Gay*, 98 F.4th at 843 (citing *Heller*, 554 U.S. at 635).

### III. Conclusion

Because Defendant has failed to show good cause under Rule 12 to excuse the untimeliness of his motion to dismiss, the Court denies Defendant's motion for leave to file [126] and denies Defendant's motion to dismiss [124] as untimely. The Court also finds that, even if the motion to dismiss were timely, it nonetheless fails on its merits. Following *Bruen*, the constitutional rights of lawful gun owners remain protected from government overreach by the Second Amendment, but such cherished protections do not prevent legislatures from placing reasonable restrictions upon the possession of firearms by convicted felons, consistent with controlling prior precedent and the relevant historical analysis. Section 922(g)(1) remains constitutional, both on its face and as applied to Defendant, and the Court thus denies Defendant's motion to dismiss [124] on its merits as well.

Dated: September 20, 2024

Entered:

John Robert Blakey
United States District Judge